1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  ALEXIS JAMES (NYBN 5603865)
   Assistant United States Attorney
5
          450 Golden Gate Avenue, Box 36055
6         San Francisco, California 94102-3495
          Telephone: (415) 436-7196
7         Alexis.James@usdoj.gov

8  Attorneys for United States of America

9                          UNITED STATES DISTRICT COURT

10                        NORTHERN DISTRICT OF CALIFORNIA

11                              SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | CASE NO. 3:25-CR-00200-WHO |
|---|---|
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING** |
| v. | Date: August 28, 2025 |
| ADALID PEREZ-ORTEGA, | Time: 1:30 p.m. |
| Defendant. | Court: Hon. William H. Orrick |

## I. OVERVIEW

The United States and the defendant, Adalid Perez-Ortega, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited prosecution, obtain a

1

1  federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted
2  drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug
3  trafficking.  For the reasons set forth below, the United States and the defendant believe that a below-
4  Guidelines sentence—accounting for the time served plus one day in this expedited prosecution—
5  alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II.  MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding contemplated by both parties.  The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record."  Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b).  The government respectfully submits that the record here—the Criminal Complaint, the Information, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report.  The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III.  APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a. Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(8):                                                24
   Defendant possessed between 100 KG and 400 KG of Converted Drug Weight[1]

b. Acceptance of Responsibility, U.S.S.G. §3E1.1:                                                    - 3

c. Adjusted Offense Level:                                                                            21

The government calculates a Criminal History Category of II (2 points).[2]

---

[1] *See* Addendum – Converted Drug Weight Table.

[2] The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database.  That report reflects that the defendant does not have any prior criminal convictions.

2
GOV. SENTENCING MEMO FOR ADALID PEREZ-ORTEGA
3:25-CR-00200-WHO

An Adjusted Offense Level of 21 and a Criminal History Category of II results in a Guidelines range of 41 to 51 months.

The government also seeks a three-year term of supervised release (as required by statute) and imposition of the $100 mandatory special assessment.

## IV. SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

### A. Section 3553 Factors

#### 1. *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant is a 42-year old male who was born in Honduras. According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law. There is an immigration detainer in place such that the parties expect the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals. To the government's knowledge, the defendant has one prior criminal conviction, placing him in Criminal History Category II.

On June 17, 2025, the defendant and his co-defendant, Elbin Nahun Cruz-Cruz, were arrested by San Francisco Police Department (SFPD) officers in the area of 6th and Stevenson Streets in San Francisco, California, in the Northern District of California. As noted above, this area is an area where narcotics are bought, sold, and used.

At approximately 11:16 p.m. on June 17, 2025, law enforcement personnel engaged in narcotics buy bust operation in the Tenderloin District. An undercover officer approached two individuals, later identified as the defendant and his co-defendant, near the doorway of 35 6th Street. The undercover buy officer observed the co-defendant engaging in a hand-to-hand narcotics transaction with an unknown male. The officer waited until the transaction was complete between the unknown subject and the co-

defendant. The officer displayed $100 of marked city funds (MCF) to the co-defendant and stated that he wanted "a hundred." The co-defendant asked the officer what he wanted, and the officer clarified that he wanted $80 of "fent" and $20 of "crystal."[3] The officer gave the co-defendant a single $100 bill of MCF. The co-defendant produced a plastic bag containing suspected fentanyl and a scale. After measuring the substance, the co-defendant gave the suspected fentanyl to the officer.

The co-defendant then called out the defendant, Perez-Ortega. The two of them engaged in a brief conversation and then the co-defendant informed the officer that the defendant would provide the officer with "crystal." The defendant produced a plastic bag containing suspected methamphetamine and the suspected methamphetamine to the officer. The officer asked the co-defendant if they "were good," to which the co-defendant nodded his head yes, and then handed the defendant one $20 bill. The officer walked away and gave a pre-arranged "bust" signal indicating he had just purchased drugs. The suspected fentanyl sold to the undercover by the co-defendant field tested positive for 2.5 grams of fentanyl. The suspected methamphetamine sold to the undercover by the defendant field tested positive as 3.3 grams of methamphetamine.

The arrest team moved in and recovered 13.3 grams of fentanyl from the ground where the co-defendant discarded it and searched the co-defendant incident to arrest. Officers located various denominations of U.S. currency totaling $1,012.00, including the $100 in pre-marked funds. Officers searched the defendant incident to arrest and located an assortment of narcotics and indicia of drug trafficking including: one small gray colored scale, 3.9 grams of suspected cocaine base, 3.1 grams of suspected cocaine HCL, 10.2 grams of suspected methamphetamine, 14.7 grams of suspected fentanyl, 4.5 grams of suspected cocaine base, and one $20 bill. All the suspected controlled substances were contained in clear plastic baggies. All of the narcotics recovered from the defendant field tested positive.

The defendant admits to possessing with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States." Plea

---

[3] "Fent," is another name for fentanyl, and "crystal" is another name for methamphetamine.

Agreement, ¶ 1.

### 2. *Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant*

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Unsurprisingly, given the relevant conduct and amount of controlled substances the defendant possessed, the adjusted Guidelines range for the defendant's conduct is 41 to 51 months. The defendant has limited criminal history. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the Guidelines range but one that the government submits is appropriate given the defendant's conduct and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public.

In order for the defendant to receive this plea offer, the defendant waived detention and has been in continuous custody since arrest; the government offered the defendant a time-served sentence in exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including waiving indictment) within weeks of arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition results in a drug trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from

returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

### B. The necessity of the proposed supervised release special conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Streets, and on the south by Folsom Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

## V. CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

DATED: August 21, 2025

Respectfully Submitted,

CRAIG H. MISSAKIAN
United States Attorney

_/s/ Alexis James_
ALEXIS JAMES
Assistant United States Attorney

# ADDENDUM – CONVERTED DRUG WEIGHT TABLE[4]

| Substance | Amount Possessed by Defendant | Conversion | Converted Drug Weight |
|---|---|---|---|
| Fentanyl | 30.5 gm | 1 gram = 2.5 kilograms | 76.25 kg |
| Methamphetamine | 15.5 gm | 1 gram = 2 kilograms | 27 kg |
| Cocaine base | 8.4 gm | 1 gram = 3,571 grams | 29,996 gm (29.996 kg) |
| Cocaine HCL | 3.1 gm | 1 gram = 200 grams | 620 gm (.62 kg) |
| **Total** | - | - | **133.86 kg** |

---

[4] *See* §2D1.1.